UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA GRAFTON, | 1:08-cv-01037 LJO DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| TINA HORNBEAK, Warden, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation. Following a jury trial in the San Bernardino County Superior Court, Petitioner was convicted of: (1) conspiracy to commit murder (Cal. Penal Code §§ 182, 187),[1] with three priors; (2) conspiracy to commit arson (§§ 182, 447(a)); (3) conspiracy to prevent or dissuade a witness from testifying (§§ 182, 136b); and (4) two counts of dissuading or preventing a witness from testifying (§ 136b). (Exhibit A, to Answer.) Petitioner was sentenced to a term of twenty-five years to life plus a two year enhancement for a total of 27-years-to-life.

In 1991, Petitioner was convicted of possession of a deadly weapon by a prisoner, and sentenced to an additional three years. (Id.)

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

In the instant petition, Petitioner does not challenge the validity of the state court judgment; rather, Petitioner contends that the Board of Parole Hearings' (Board) decision finding her unsuitable for parole at her October 26, 2006 parole hearing was not supported by some evidence. Petitioner also challenges the Board's decision to deny parole for two years.

Petitioner filed an original Petition for Writ of Habeas Corpus in the California Supreme Court, which was summarily denied on July 9, 2008. (Exhibit C, to Answer.)

Petitioner filed the instant federal Petition for Writ of Habeas Corpus on July 21, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on December 3, 2008, and Petitioner filed a traverse on January 6, 2009. (Court Docs. 19, 20.)

STATEMENT OF FACTS[2]

At the time of the commitment offense, Grafton and co-defendant Jean Tate were awaiting retrial in San Bernardino County on attempted murder charges of Jean's husband Jess. Jean Tate decided to turn the state's evidence against Petitioner and testify against her. On April 4, 1979, Jean Tate was released on her own recognizance, and trial was set for June 25, 1979. Petitioner and her current co-defendant, Gerard Weston, began to conspire to murder Jess and Jean Tate to prevent them from testifying. Conversations between Petitioner and Weston were monitored during their visits to the county jail and consisted of death threats sent to the Tate's and possible escape attempts with force from the courtroom. On June 26, 1979, Weston's apartment was searched and homemade "napalm" was found along with manuals on the construction of bombs.
(Exhibit B(1), at 8-9.)

DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

---

[2] These facts are taken from the transcript of the October 26, 2006 Board hearing.

1  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
2  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
3  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
4  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
5  provisions.

6       Petitioner is in custody of the California Department of Corrections pursuant to a state
7  court judgment. Even though Petitioner is not challenging the underlying state court conviction,
8  28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
9  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
10 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
11 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
12 state prisoner in custody pursuant to a state court judgment, even when the petition is not
13 challenging [her] underlying state court conviction.'").

14      The instant petition is reviewed under the provisions of the Antiterrorism and Effective
15 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
16 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
17 adjudication of the claim "resulted in a decision that was contrary to, or involved an
18 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
19 of the United States" or "resulted in a decision that was based on an unreasonable determination
20 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
21 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

22      As a threshold matter, this Court must "first decide what constitutes 'clearly established
23 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
24 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
25 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
26 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
27 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
28 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

In this instance, because there is no reasoned decision by the state court, this Court must independently review the record to determine whether the state court erred in its application of

controlling federal law. Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir.2007), *quoting* Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."). The highly deferential standard of review under 28 U.S.C. § 2254(d)(1), however, still governs. Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather,

5

the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

>   (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
>   (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Exhibit B, to Answer.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (Aug. 21, 2008). The applicable standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in

original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[3]

At the 2006 parole hearing, the BPH relied on the circumstances of Petitioner's commitment offense finding it was carried out in an especially cruel and callous manner, but for the fact it was interrupted.[4] Petitioner's solicitation of Weston to kill the Tates by sending death threats, producing "napalm" and manufacturing of a bomb, constitute some evidence that Petitioner attempted to bomb and burn them to prevent them from testifying against her at her trial for attempted murder of Jess Tate. The heinous nature of a killing by bomb with an inflammable liquid certainly demonstrates an especially cruel and callous disregard for human suffering. The Board noted that although "the offense did [not] occur, there was the impact on the family." (Exhibit B(2), at 88.) These factual circumstances clearly support the finding that the commitment offense would have been carried out in a very dispassionate and calculated

---

[3] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

[4] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1  manner demonstrating an exceptionally callous disregard to human suffering. 15 Cal. Code Regs.
2  § 2402 (c)(1)(D).

3        Petitioner also had an escalating pattern of criminal conduct and/or violence considering
4  her prior multiple convictions for forgery, escape from custody conviction, assault on a peace
5  officer, possession of drugs and alcohol in prison, and 1991 conviction for possession of a deadly
6  weapon that resulted in an additional prison term.  (Exhibit B(2), at 89; 15 Cal.Code Regs. §
7  2402(c)(2).)  Petitioner's prior conduct was of legitimate concern to the Board because she has
8  "failed to profit from society's previous attempts to correct [her] criminality, and such attempts
9  included adult probation, county jail, prior prison term, and parole." (Id.)  Based on Petitioner's
10 extensive criminal history, there is some evidence to support the Board's finding that he engaged
11 in an escalating pattern of criminality and poses a current threat to public safety.

12       In addition, the Board considered Petitioner's institutional behavior.[5] 15 Cal. Code Regs.
13 § 2402(c)(6).  The Board noted that Petitioner received fifteen, CDC-128(a) counseling chronos,
14 the last occurred on March 27, 1990 for disobeying orders, and forty-seven serious rules
15 violations, the last on October 17, 1991 for possession of a weapon-which resulted in a
16 conviction and consecutive sentence of 3 years.  (Exhibit B(2), at 90.)  This certainly lends
17 support to the Board's finding that Petitioner has a history of "violence, assaultive behavior, and
18 an escalating pattern of criminal behavior" (Id. at 89.)  Although Petitioner has shown
19 improvement in her institutional behavior, "from 1980 until 1995 was a period of time where
20 [her] ability to program was limited, and essentially [her] gains have all occurred in the last
21 decade." (Id. at 91.)  Some evidence supports the Board's finding that a longer period of
22 observation is warranted given Petitioner's serious and extensive disciplinary history.  (Id. at 92.)

23       The Board was also concerned about Petitioner's self-determination that she was a
24 recovered drug addict and found she lacked an understanding into her addiction. (Id. at 90.)
25 However, it does not appear that there is "some evidence" to support this finding.  Petitioner has
26 been drug-free since her incarceration and has not received a single disciplinary violation for

---

[5] A CDC-115 (Rules Violation Report) documents misconduct which is a violation of law or which is not minor in nature.  15 Cal. Code. Regs. §§ 3312(a)(2), (a)(3)

8

abusing alcohol. Petitioner explained that her drug addiction was exclusively from 1970 to 1977, and she has been a participant in Narcotics Anonymous. (Exhibit B(2), at 61-62.) In fact, Dr. Kunkel stated that "[t]he inmate takes the issue of intoxicated substances very seriously and she has developed adequate psychological coping mechanism which are measurable as demonstrated on psychological testing." (Exhibit B(2), at 45.) Dr. Kunkel concluded that Petitioner's chance of using drugs was very low. (Id.) Despite the psychologist's assessment, the Board cited no evidence other than its apparent belief that Petitioner was not a recovered drug addict. However, the only evidence before the Board was that Petitioner had not been involved with drugs for almost 30 years. Thus, this particular finding is not supported by some evidence. Nonetheless, for the reasons discussed *supra*, the Board's finding is supported by other independent evidence.

The Board did note the psychological report prepared in October of 2006 was very favorable and the parole plans appeared solid. (Id. at 90-91.) The Board concluded, however, that these positive aspects did not outweigh the factors of unsuitability.

To the extent Petitioner contends that the continued reliance on the unchanging factors of her commitment offense and prior criminal conduct violates her due process rights, it is without merit. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. This was because in each of these cases the prisoner had not yet served the minimum term of his sentence. In the instant case, at the time of the 2006 hearing, Petitioner had served 26 years on a 30 years to life sentence (25-years-to-life, plus 2 years weapon enhancement and 3 years consecutive for 1991 possession of weapon conviction,

9

totaling 30 years to life) and only became eligible for parole consideration in 2004. Thus, both Irons and Biggs are inapplicable.[6]

In sum, although the Board relied on the immutable and unchanging factors of Petitioner's commitment offense, prior criminal history, and institutional behavior, the gravity of such factors together provided some evidence that Petitioner is currently a danger to society if released. Because the Board's findings are supported by "some evidence," it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."  28 U.S.C. §§ 2254(d)(1), (2).

Petitioner's remaining challenges to the Board's decision are also unavailing. Petitioner contends that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court. However, Petitioner has failed to present any clear and convincing evidence, much less demonstrate that the state court made factual errors. Rather, it appears that Petitioner simply disagrees with the weight assigned to the evidence, which does not support a basis for habeas corpus relief.

Petitioner further claims that the Board's two-year denial of parole was arbitrary and capricious and violated her due process rights. However, there is no clearly established Supreme Court law to support his claim, and it merely amounts to a claim for violation of state law which is not cognizable. See Pulley v. Harris, 465 U.S. 37, 41 (1984) (federal court may not issue a writ on the basis of a perceived error of state law).

Petitioner contends that her due process rights were violated by the denial to present witnesses at her hearing. At the March 2006 hearing, which was continued to October 2006, Petitioner requested to have witnesses testify, however, the request was not renewed at the October hearing. Moreover, in March 2006, it was explained to her that she did not have a right

---

[6] The Lawrence court also pointed out that a decision of whether to grant parole requires "individualized assessment of the continuing danger and risk to public safety" in light of the statutory factors. 44 Cal.4th at 1227.

to present witnesses at the hearing, but she could provide letters of support which the Board would consider. (Exhibit B, to Petition, at pp. 11-12.) In fact, at the October hearing, Petitioner presented several letters in support of her release, which the Board thoroughly considered. (Exhibit B(1), to Answer, at 16-31.) Furthermore, there is no clearly established law entitling a prisoner to present witness testimony at parole consideration hearings, and this claims fails under AEDPA. 28 U.S.C. § 2254(d)(1).

Petitioner further contends that she was entitled to have the same panel which continued the March 2006 hearing to preside over the October 2006 hearing. Petitioner's claim fails as there is no clearly established right to the same panel and habeas corpus relief is foreclosed.

Petitioner next claims the standard used by the Board as set forth in § 2402 is unconstitutionally vague. Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis. Maynard v. Cartwright, 486 U.S. 356, 361 (1988). Thus, the court does not address whether the prohibition is vague or overbroad in its other potential applications. United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir.1985). A criminal sanction is not vague if it provides fair notice of the conduct proscribed. Id. A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question. Id.

Petitioner's void-for-vagueness argument is not persuasive. Cal.Code Regs. tit. 15, § 2402(c) sets forth the circumstances tending to show unsuitability. The Board cannot merely characterize a murder as heinous and deny parole. The Board must take into consideration all of the factors set forth in § 2402(c)(1) in determining whether the crime was especially heinous, atrocious or cruel. In Petitioner's case, the panel properly considered the factors set forth in § 2402(c) and determined the crime was particularly egregious.

Petitioner claims the Board is requiring that she attend Alcoholics Anonymous and Narcotics Anonymous as a requirement for parole in violation of her First Amendment rights. However, Petitioner fails to provide any factual or legal support for such claim, and it is without merit.

1          Finally, Petitioner's three remaining claims are completely without merit or
2  incomprehensible.  First, Petitioner contends that her equal protection rights have been violated
3  because other inmates convicted of her same offense have been paroled.  (Petition, at 5.)
4  Petitioner's claim is without any factual or legal support and fails on the merits.  Second,
5  Petitioner contends that because the regulations do not contain a recommended term for the
6  offense of conspiracy to commit murder, where the murder did not actually occur, she was denied
7  the right to a fair suitability hearing.  (Petition, at 6.)  Petitioner's claim is not supported by any
8  clearly established authority and because she is serving an indeterminate life term, she is not
9  entitled to a specific term of incarceration.  Lastly, Petitioner contends that California Code of
10  Regulations, title 15, sections 2401 and 2402, do not recognize a presumptive right to a parole
11  release date which is inconsistent with California Penal Code section 3041.  (Petition, at 7.)
12  Petitioner's claim is completely unfounded as the plain language of the cited statutes clearly state
13  that she is not entitled to a parole release date unless and until she is found suitable for parole.
14  Accordingly, Petitioner's claims are without merit and must be denied.

## RECOMMENDATION

16         Based on the foregoing, it is HEREBY RECOMMENDED that:
17         1.      The Petition for Writ of Habeas Corpus be DENIED; and
18         2.      The Clerk of Court be DIRECTED to enter judgment for Respondent.
19         This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,
20  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)
21  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern
22  District of California.  Within thirty (30) days after being served with a copy of this Findings and
23  Recommendation, any party may file written objections with the Court and serve a copy on all
24  parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and
25  Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days
26  (plus three days if served by mail) after service of the Objections.  The Finding and
27  Recommendation will then be submitted to the District Court for review of the Magistrate
28  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 13, 2009**            **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE